UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ZENON MAYA ALVARADO,

Plaintiff,

- against -

HOUSE OF ASTORIA RESTAURANT & LOUNGE INC., and ALI A. MOHAMAD, individually,

Defendants.

**MEMORANDUM DECISION AND ORDER**

25-cv-3599 (BMC)

**COGAN**, District Judge.

This case, brought under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), was tried by a jury with the undersigned presiding. The jury rendered a verdict in favor of plaintiff. Before the Court are three post-trial motions: (1) a motion by plaintiff to amend the judgment and correct the case caption; (2) a motion by defendants for judgment as a matter of law or for a new trial; and (3) a motion by plaintiff for attorney's fees, costs, and post-judgment interest. For the reasons that follow, plaintiffs' motion to amend the judgment and correct the case caption is granted; defendants' motion is denied; and plaintiff's motion for attorney's fees and costs is granted in part.

## BACKGROUND

Plaintiff worked for Home of Astoria Restaurant & Lounge Inc. ("Home of Astoria")[1] and its owner, Ali Mohamad, as a cook from November 2022 until January 2025. In June 2025, plaintiff brought this lawsuit under the FLSA and the NYLL against Home of Astoria and

[1] As discussed further below, although the legal name of the business is "Home of Astoria Restaurant & Lounge Inc.", up until now, the corporate defendant in this case has been referred to as "House of Astoria Restaurant & Lounge Inc.".

Mohamad (together, "defendants"). A few months later, in September 2025, an employee of defendants named Jose Perez filed a police report with the New York City Police Department, alleging that plaintiff had threatened him with a knife in January 2025.

Plaintiff alleged failure to pay overtime wages, failure to pay spread-of-hours pay, failure to furnish proper wage statements and notices, and retaliation.[2] The retaliation claim was about the police report, which plaintiff alleged was a false allegation made in retaliation because of this lawsuit.

The parties litigated the case through a three-day trial which resulted in a verdict in favor of plaintiff. Plaintiff called five witnesses: defendant Ali Mohamad, Nazih Chahin, Mohammad Elder (via deposition designation), Jose Perez (via deposition designation), and plaintiff Zenon Maya Alvarado. Defendants called three witnesses: Ali Mohamad, Ana Radford, and Nazih Chahin.

The Court does not attempt to summarize all the testimony at trial, but in relevant part, regarding the name of his business, Mohamad testified that he owned "HOA Lounge" located at 28-49 Steinway Street in Astoria, New York. He testified that he had never heard of "House of Astoria Restaurant & Lounge, Inc." and had "maybe" heard of "Home of Astoria Restaurant & Lounge, Inc.", but he understood the name of his business to be "HOA Lounge & Restaurant Corp.".

Regarding the hours plaintiff worked during his employment, plaintiff testified that he worked 72 hours per week until Jose Perez was hired as another cook, at which point plaintiff started working approximately 48 hours per week. Defendants' witnesses contradicted plaintiff's testimony. For example, Radford testified that she'd never seen plaintiff work 12 hours a day;

[2] The Court dismissed plaintiff's claims regarding defendants' alleged failure to furnish proper wage statements and notices, so those claims were not heard at trial.

Chahin testified that plaintiff worked six hours a day; Mohamad testified that he never saw plaintiff work overtime.

During jury deliberations, an issue arose as to one of the jurors ("Juror Number 5") and his willingness to participate. The juror first expressed to court staff that he did not agree with the other jurors and did not know what to do about that. The Court asked for the parties' input. Plaintiff represented that he was comfortable releasing the juror. Defendants asked for a mistrial, and when the Court explained that this situation was not grounds for a mistrial, defendants suggested instead that the juror continue with deliberations. The Court brought the juror into the courtroom and instructed him to go back into the jury room and continue to deliberate with his fellow jurors.

Shortly thereafter, Juror Number 5 packed his bags and tried to leave the courthouse. The Court ordered him not to leave, but the juror refused to reenter the jury room. The Court explained to the parties that the juror's behavior suggested "a refusal to deliberate, and a refusal to deliberate … constitutes cause to excuse the juror." Juror Number 5 told court staff that he would flip his vote the other way if he was required to stay.

The Court brought Juror Number 5 into the courtroom again and asked him if he was refusing to deliberate. The juror said he could not deliberate "because [he didn't] understand any of the things being talked about." The Court found that the juror's statement about not understanding was not credible. The Court, after confirming that he refused to go back into the jury room, excused Juror Number 5. The jury was therefore reduced from seven members to six.

Later that day, the jury reached a verdict. The jury found as follows:

- Plaintiff established by a preponderance of the evidence that defendants failed to pay plaintiff overtime wages in violation of the FLSA and the NYLL. For the period between

December 15, 2022 and September 29, 2024, plaintiff worked 72 hours per week, 32 hours of which were overtime hours. For the period between October 1, 2024 and January 4, 2025, plaintiff worked 48 hours per week, 8 of which were overtime hours. Defendant did not act in good faith.

- Plaintiff proved by a preponderance of the evidence that he worked a spread-of-hours longer than 10 hours on 324 days in the years 2022 and 2023 and 234 days in the year 2024. Plaintiff was not paid at least one hour's pay at the applicable New York minimum wage for each day that his spread-of-hours exceeded 10 hours.

- Plaintiff proved by a preponderance of the evidence that (1) he engaged in statutorily protected activity by filing this lawsuit; (2) defendants took an adverse action against him by causing a police report to be filed against him; and (3) but for his filing the lawsuit, the adverse action would not have occurred. Plaintiff therefore proved his retaliation claim by a preponderance of the evidence.

Thereafter, the Court entered judgment in favor of plaintiff and ordered total damages of $336,088, comprised of the following: for plaintiff's unpaid overtime claims under the FLSA and NYLL, $159,390 in compensatory damages and $159,390 in liquidated damages; for plaintiff's unpaid spread-of-hours claims under the NYLL, $8,604 in compensatory damages and $8,604 in liquidated damages; and for plaintiff's retaliation claims under the FLSA and NYLL, $100 in emotional distress damages. The Court also ordered pre-judgment interest in the amount of $40,221.90.

## DISCUSSION

### I. Plaintiff's Motion to Amend the Judgment and Correct the Case Caption

#### A. Legal Standard

Under Federal Rule of Civil Procedure 60(a), the Court "may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." "[I]n appropriate circumstances, a district court may employ [Rule 60] to correct misnomers in a party's name." Robinson v. Sanctuary Music, 383 F. App'x 54, 57 (2d Cir. 2010). "Such a misnomer may be corrected when 'plaintiffs did not select the wrong defendant but committed the lesser sin of mislabeling the right defendant.'" Id. (quoting Datskow v. Teledyne, Inc., Cont'l Prods. Div., 899 F.2d 1298, 1301 (2d Cir. 1990)).

Courts consider the following factors in determining whether a misnomer should be corrected: "(1) whether the plaintiff identified the defendant in several ways, (2) whether the defendant's correct address appeared on the complaint, and (3) the degree of similarity between the name contained in the complaint and the actual name." Jimenez v. G&J's Pizzeria LLC, No. 20-cv-5454, 2022 WL 3714667, at *1 (S.D.N.Y. Aug. 29, 2022).

#### B. Analysis

It is obvious that the misnomer in the corporate defendant's name – referring to the defendant as "House of Astoria" rather than "Home of Astoria" – was nothing more than a harmless clerical error. This error had no bearing on defendant's ability to defend the case against it. The address of Home of Astoria, 28-49 Steinway Street, appeared in the complaint. The summons was served on defendant at that address. Home of Astoria litigated the case through trial and even stipulated that plaintiff was employed there from November 2022 until January 2025. At trial, after Mohamad testified that he had "maybe" heard of Home of Astoria,

he was impeached with an active, official record from the New York Secretary of State that referred to the business at 28-49 Steinway Street as "Home of Astoria Corp.".

In short, everyone involved in this case understood that Home of Astoria was the corporate defendant, regardless of whether it was referred to as "House of Astoria" or "Home of Astoria" or "HOA". See Fluoro Elec. Corp. v. Branford Assocs., 489 F.2d 320, 325-26 (2d Cir. 1973) (allowing correction of case caption because "to the plaintiff, to the trial judge, and to the jury it was plain that only one [defendant] had contracted with the plaintiff"). The similarity between "Home of Astoria" and "House of Astoria" is obvious and requires no explanation. Thus, all the factors weigh in favor of amending the judgment and correcting the case caption.

"Had this been corrected earlier, no other persons would have been served in the action. No others would have appeared before the court. [This is] properly the correction of a misnomer under Rule 60(a)." Fluoro Elec. Corp., 489 F.2d at 326. Plaintiff's motion to amend the judgment and correct the case caption is therefore granted. The Clerk is directed to correct the case caption such that the corporate defendant is "HOME OF ASTORIA RESTAURANT & LOUNGE INC, d.b.a. HOA," and the final judgment amended to reflect the same.

## II. Defendants' Motion for Judgment as a Matter of Law or for a New Trial

### A. Legal Standard

#### *i. Judgment as a Matter of Law*

Under Federal Rule of Civil Procedure 50(a), a party may move for judgment as a matter of law "at any time before the case is submitted to the jury." The motion "must specify the judgment sought and law and facts that entitle the movant to the judgment." Fed. R. Civ. P. 50(a)(2). Under Federal Rule of Civil Procedure 50(b), "[i]f the court does not grant a motion for judgment as a matter of law made under Rule 50(a) … the movant may file a renewed motion

for judgment as a matter of law" no later than 28 days after the entry of judgment. "The posttrial motion is limited to those grounds that were specifically raised in the prior motion[.]" Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 286 (2d Cir. 1998) (quoting McCardle v. Haddad, 131 F.3d 43, 51 (2d Cir. 1997)).

"In reviewing a Rule 50 motion, a court may consider all the record evidence, but in doing so it 'must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.'" Cross v. N.Y.C. Transit Auth., 417 F.3d 241, 247 (2d Cir. 2005) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)). "A movant's burden in securing Rule 50 relief is particularly heavy after the jury has deliberated in the case and actually returned its verdict. Under such circumstances, the district court may set aside the verdict only where there is 'such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture[.]'" Cross, 417 F.3d at 248 (quoting Song v. Ives Labs., Inc., 957 F.2d 1041, 1046 (2d Cir. 1992)).

*ii. New Trial*

Under Federal Rule of Civil Procedure 59, "[t]he court may, on motion, grant a new trial … after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Although this standard may sound broad, it is not. A court will only grant a new trial if it "determines that, in its independent judgment, the jury has reached a seriously erroneous result or its verdict is a miscarriage of justice." AMW Materials Testing, Inc. v. Town of Babylon, 584 F.3d 436, 456 (2d Cir. 2009) (quoting Nimely v. City of New York, 414 F.3d 381, 392 (2d Cir. 2005)).

"Unlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict. Moreover, a trial judge is free to weigh the evidence himself and need not view it in the light most favorable to the verdict winner." DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 133-34 (2d Cir. 1998). However, "this is not to say that a district judge may freely substitute [his] assessment of the credibility of witnesses for that of the jury" because "[a] jury's credibility assessments are entitled to deference." United States v. Landau, 155 F.3d 93, 104-05 (2d Cir. 1998).

**B. Analysis**

As a preliminary matter, it is not at all clear that defendants preserved any arguments before the jury verdict such that they may now "renew" their motion for judgment as a matter of law under Rule 50. See Galdieri-Abrosini, 136 F.3d at 286 ("The posttrial motion is limited to those grounds that were specifically raised in the prior motion."). All defendants said at trial was that they wanted to "move to dismiss"; they did not specify any particular grounds. However, because defendants also request a new trial under Rule 59, the Court will consider the arguments on the merits.

*i. Sufficiency of the Evidence*

First, defendants argue that there was insufficient evidence for the jury to conclude that plaintiff worked 72 hours per week between December 15, 2022 and September 29, 2024 and 48 hours per week between October 1, 2024 and January 24, 2025. To prove a claim for unpaid overtime under the FLSA, "a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." Kuebel v. Black & Decker, Inc., 643 F.3d 352, 361 (2d Cir. 2011).

Defendants claim that plaintiff's testimony about his hours was incomplete and only approximate, and therefore insufficient evidence for the jury to find that plaintiff had worked overtime. But defendants ignore the governing law on this issue. "When an employer fails to maintain accurate and complete records of the hours employees work and the amounts they are paid, the plaintiff-employee need only submit sufficient evidence from which violations of the FLSA and the amount of an award may be reasonably inferred." Andreyuk v. ASF Constr. & Excavation Corp., No. 19-cv-7476, 2022 WL 4658457, at *10 (S.D.N.Y. Sept. 30, 2022) (quoting Teofilo v. Real Thai Cuisine, Inc., No. 18-cv-7238, 2021 WL 22716, at *3 (S.D.N.Y. Jan. 4, 2021)); see also Andreyuk, 2022 WL 4658457, at *10 (explaining that under the NYLL, "an employer who fails to maintain the appropriate records 'shall bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements'" (quoting Teofilo, 2021 WL 22716, at *3)).

Plaintiff's "estimates based on his own recollection" were sufficient evidence for the jury to infer that he was inadequately compensated. Kuebel, 643 F.3d at 362. This is particularly so because defendants did not produce any weekly time records for plaintiff. "The employer, at its peril, had to keep track of the amount of overtime worked by [its] employees" under the FLSA. Caserta v. Home Lines Agency, Inc., 273 F.2d 943, 946 (2d Cir. 1959) (citation omitted). Defendants may not overturn a jury verdict because their own records were inadequate. See Hart v. Rick's Cabaret Int'l, Inc., 60 F. Supp. 3d 447, 466 (S.D.N.Y. 2014) ("It would be manifestly unfair to allow employers to avoid, or reduce, their liability simply because they kept shoddy records.") (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946)).

Second, defendants argue that there was insufficient evidence for the jury to conclude that defendants had actual or constructive knowledge of the alleged overtime. This argument

also fails. Although plaintiff testified that he never told defendants the number of hours he was working, it was reasonable for the jury to nevertheless conclude that defendants knew that plaintiff was working overtime. "Constructive knowledge may be imputed to the employer when it has reason to believe that its employee is working beyond his shift." Gordon v Kaleida Health, 299 F.R.D. 380, 392 (W.D.N.Y. 2014). Plaintiff testified that his supervisor saw him in the kitchen while he was working. That was sufficient evidence for the jury to conclude that defendants had actual or constructive knowledge of his overtime. It was also reasonable for the jury to conclude that a business like Home of Astoria, where employees work exclusively in-person, has constructive knowledge of when its employees are working. See Perry v. City of New York, 78 F.4th 502, 509 (2d Cir. 2023) ("If the employer suffers or permits the work – either by requiring it, knowing about it, or failing to exercise reasonable diligence to discover it – then it must compensate the employee, even if the employee failed to report the work and even if the employer did not know that the employee was working unpaid.").

Third, defendants argue that the testimonies of three defense witnesses "negat[ed] the reasonableness of any inference to be drawn from [plaintiff's] testimony." Defendants' argument relies on Anderson v. Mount Clemens Pottery Co., 328 U.S. 680 (1946), but Anderson only confirms that the jury's verdict in this case was in accordance with the law. In Anderson, the Court established a burden-shifting framework in cases like this:

> "[A]n employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate."

Id. at 687-88. Here, defendants point to three defense witnesses whose testimony may have contradicted plaintiff's testimony about the overtime he worked. But none of defendants' testimony could show "the precise amount of performed" because defendants' records were inadequate. It was therefore up to the jury to weigh the credibility of each witness and decide if the inference to be drawn from plaintiff's testimony was reasonable. The jury chose to believe plaintiff's account.

This trial was largely about credibility. It was the jury's role to weigh the credibility of each witness, and the jury's credibility determinations "are entitled to deference." Landau, 155 F.3d at 104-05. But even if the Court reweighs the evidence itself, the jury's verdict was clearly not "the result of sheer surmise or conjecture," Cross, 417 F.3d at 248, or a "seriously erroneous result" or "a miscarriage of justice," AMW Materials Testing, Inc., 584 F.3d at 456. Defendants' motion for judgment as a matter of law or for a new trial based on insufficiency of the evidence therefore fails.

*ii. Juror Number 5*

Defendants next argue that a new trial is warranted because the Court excused Juror Number 5 during the trial. Under Federal Rule of Civil Procedure 47(c), the Court may exclude jurors for good cause.

The Court had good cause to excuse Juror Number 5; he refused to deliberate with his fellow jurors. See United States v. Baker, 262 F.3d 124, 131 (2d Cir. 2001) (affirming removal of juror "for her admitted refusal to perform her duty as a juror by deliberating together with the other jurors"). Before excusing the juror, the Court discussed the importance of deliberations with him and instructed him to try and persuade his fellow jurors or see if he could be persuaded.

Shortly after the Court ordered Juror Number 5 to keep deliberating, the juror packed his bags and tried to leave. He refused to reenter the jury room. At this point, the Court expressed to the parties its view that this was "not a deadlock in the sense that he won't vote the way others are trying to persuade him to vote," but rather "a refusal to deliberate." The Court further explained that Juror Number 5 told court staff that if he had to stay, he was just going to flip his vote. That statement evinced an unwillingness to deliberate and vote based on his convictions. The Court thus had good cause to excuse him, not because he was a "holdout" as defendants suggest, but because he refused to perform his duty as a juror.[3]

*iii. Liquidated Damages*

Defendants further argue that the award of liquidated damages should be vacated because defendants had good faith. "In order to prevail on this [good faith] defense, the employer must show (1) subjective good faith and (2) objectively reasonable grounds for believing that he was acting in compliance with the provisions of the FLSA." Soler v. G & U, Inc., 628 F. Supp. 720, 724 (S.D.N.Y. 1986). "If the employer fails to satisfy those requirements, the district court is without discretion to deny liquidated damages." Id. Evidently, the jury found that defendants had failed to satisfy one or both of those requirements, and the Court is not persuaded that the jury's verdict should be overruled. The Court is therefore "without discretion to deny liquidated damages."

[3] Defendants insist that Juror Number 5 did not refuse to deliberate, but rather "did not understand what they were discussing." Defendants argue that the Court "pressured" the parties on this issue and suggest that the juror may have just been "feeling self-conscious and awkward" about not understanding the deliberations. It is the Court's decision to excuse a juror under Rule 47 if there is cause to do so; it is not the parties' decision. The Court's interpretation of the situation was that Juror Number 5 was refusing to deliberate. In any event, if the juror truly did not understand the deliberations well enough to participate, that would be a separate and equally acceptable basis to excuse a juror. See Duke v. County of Nassau, 63 F. App'x 558, 561 (2d Cir. 2003) (finding that the district court did not abuse its discretion in excusing juror that was "suffering physically and mentally").

*iv. Judgment Against "House of Astoria"*

Defendants' final argument is that the judgment cannot be enforced because "no entity exists titled 'House of Astoria Restaurant & Lounge Inc.'". Because the Court has granted plaintiff's motion to amend the judgment and correct the case caption, this argument is denied as moot.

"The bar to setting aside a jury verdict is high." Rhee-Karn v. Lask, 797 F. Supp. 3d 343, 353 (S.D.N.Y. 2025). Defendants' arguments do not move the Court anywhere near that bar. The Court therefore denies defendants' motion for judgment as a matter of law or for a new trial in its entirety.

## III. Plaintiff's Motion for Attorney's Fees, Costs, and Post-Judgment Interest

### A. Legal Standard

Under Federal Rule of Civil Procedure 54(d), a prevailing party may move for attorney's fees and costs. See also 29 U.S.C. § 216(b) (in a FLSA action, courts "shall … allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"). The district court has broad discretion to award reasonable fees to a prevailing party. See Matusiak v. Erie Cnty. Water Auth., 757 F.3d 31, 64 (2d Cir. 2014). However, "[h]ours that are 'excessive, redundant, or otherwise unnecessary' are to be excluded." Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). If the Court finds that the fees requested are excessive for one reason or another, the Court may reduce the award by an across-the-board percentage "as a practical means of trimming fat from a fee application". N.Y. State A.R.C., Inc. v. Carey, 711 F.2d 1136, 1146 (2d Cir. 1983). The Second Circuit "do[es] not require that the court set forth item-by-item findings concerning what may be countless

objections to individual billing items." Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994).

**B. Analysis**

"Fee awards in wage and hour cases should 'encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able legal counsel.'" Fisher v. SD Prot., Inc., 948 F.3d 593, 603 (2d Cir. 2020) (quoting Sand v. Greenberg, No. 08-cv-7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010)). There is no question that plaintiff is entitled to attorney's fees and costs. The only question "is how much [plaintiff's counsel] ought to be awarded." McGlone v. Contract Callers, Inc., 146 F. Supp. 3d 582, 584 (S.D.N.Y. 2015). Plaintiff is requesting $167,042.50 in fees and $22,158.69 in costs.

The Court uses the lodestar method, *i.e.*, "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," as a starting point. Healey v. Leavitt, 485 F.3d 63, 71 (2d Cir. 2007) (quoting Hensley, 461 U.S. at 433). "Both [the Second Circuit] and the Supreme Court have held that the lodestar … creates a 'presumptively reasonable fee.'" Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (citation omitted). Plaintiff seeks reimbursement for 524.9 hours of work by his attorneys and their staff. The hourly rates for the attorneys and staff involved range from $600.00 for the most senior partner to $150.00 for paraprofessional staff.

Defendants predictably raise several objections to plaintiff's requested fees. For example, defendants point out that some of plaintiff counsel's hourly entries are duplicative and thus may have been excessive. Defendants also complain that plaintiff (1) engaged in block billing; (2) seeks reimbursement at attorney-level rates for certain clerical work; (3) applies hourly rates that exceed the hourly rates this Court has previously found acceptable; and

(4) unnecessarily paid for expedited trial transcripts. For these alleged transgressions and others, defendants urge the Court to reduce plaintiff counsel's fees by 50 percent.

The Court, having reviewed the time entries, including the ones to which defendants object, does not find that a 50 percent reduction is appropriate. Most of defendants' examples of duplicative entries are hours devoted to trial preparation, and the presence of multiple attorneys and staff members at trial preparation sessions and conferences is reasonable and not necessarily excessive. The Court is similarly not persuaded that a substantial reduction is warranted for clerical work billed at attorney rates. Although clerical work should not be done by attorneys, an attorney still must supervise her staff. It is also reasonable for plaintiff to pay for expedited trial transcripts during trial; this is a common and strategic decision that parties make to ensure they are prepared for both the following day of trial and closing arguments.

However, defendants are correct that the hourly rates for plaintiff attorneys Norinsberg ($600.00) and Pollock ($500.00) are above "the highest rate allowed for FLSA attorneys in this district." Mendez v. Sam Natural Deli Corp., No. 25-cv-1692, 2025 WL 3089308, at *2 (E.D.N.Y. Nov. 5, 2025). The Court is not convinced that "a reasonable, paying client would be willing to pay" these rates. Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 184 (2d Cir. 2008). In light of these rates and the other objections defendants have raised, the Court finds it appropriate to reduce plaintiff's fees by 10 percent.[4] The Court therefore awards plaintiff's attorney's fees in the amount of $141,986.13.[5]

[4] Norinsberg only billed two hours of work on this matter, so his rate does not justify a large across-the-board reduction. Pollock, whose rate is much closer to the highest acceptable rate in FLSA cases in this District ($450.00), was lead counsel on the case and billed nearly 100 hours. But if the Court reduces Pollock's rate to $450 per hour, the fee award only reduces by approximately $5,000 (~3% of the requested fee).

[5] At least part of the reason plaintiff's counsel's requested fee may seem high at first blush is because defendants were apparently unwilling to engage in settlement negotiations. Plaintiff's counsel should not be penalized for litigating this meritorious case through trial.

The Court also largely grants plaintiff's request for costs and post-judgment interest. Plaintiff's costs, as itemized in the bill of costs, are reasonable. Most of plaintiff's costs reflect typical expenses of litigation, including unavoidable costs such as interpreter fees during the trial. However, plaintiff may not be reimbursed for the fees he had to pay defendants' counsel pursuant to the Court's December 30, 2025 order. The Court ordered that cost allocation to ease the burden on defendants after plaintiff amended his complaint to add new allegations at a relatively late stage in the case. The Court did not intend for plaintiff to be able to recover those costs as discovery costs. Thus, plaintiff's costs are reduced by that amount ($3,267.00), and the Court awards plaintiff's costs in the amount of $18,891.69.

On post-judgment interest, this award "is mandatory." Schipani v. McLeod, 541 F.3d 158, 165 (2d Cir. 2008). The request for post-judgment interest is therefore granted.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to amend the judgment and correct the case caption [56] is granted, defendants' motion for judgment as a matter of law or for a new trial [54] is denied, and plaintiff's motion for attorney fees and costs [53] is granted in part.

**SO ORDERED.**

Brian M. Cogan
U.S.D.J.

Dated: Brooklyn, New York
October 20, 2026